<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL[1]</td></tr>
<tr>
<td>JOSÉ R. IZQUIERDO II<br><br>Demandante - Peticionario<br><br>v.<br><br>ENRIQUE (KIKE) CRUZ,<br>Y OTROS<br><br>Demandado - Recurrido</td>
<td>KLCE202500656</td>
<td><i>Certiorari</i> procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.:<br>SJ2020CV06965<br>(804)<br><br>Sobre:<br>Daños y Perjuicios</td>
</tr>
</table>

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Candelaria Rosa y el Juez Marrero Guerrero.

Sánchez Ramos, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 16 de septiembre de 2025.

En una acción de daños por difamación, el Tribunal de Primera Instancia ("TPI") determinó que la parte demandada no tenía que contestar ciertas preguntas que se le formularon durante una deposición. Según se explica en detalle a continuación, concluimos, contrario al TPI, que la parte demandada sí tiene que contestar algunas de esas preguntas, pues tratan sobre materia pertinente y no privilegiada. En cuanto a las preguntas que pretenden descubrir materia potencialmente privilegiada, por la forma en que hemos determinado que debe conducirse la acción, y por el estado procesal del caso, no es necesario resolver al respecto en esta etapa.

I.

En diciembre de 2020, el Sr. José R. Izquierdo II (el "Demandante" o el "Peticionario") presentó la acción de referencia,

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron los correspondientes recursos anteriores (KLCE202200766).

sobre daños y perjuicios por libelo (la "Demanda"), en contra del Sr. Enrique Cruz (el "Columnista" o "Demandado"), su esposa, la Sa. Vivian López Álvarez, la Sociedad Legal de Gananciales por ambos compuesta y Publi-Inversiones Puerto Rico Inc. (el "Vocero").

En la Demanda, se alegó que, el 19 de diciembre de 2017, el Vocero publicó una columna suscrita por el Demandado, denominada "El acosador, el encubridor y sus víctimas" (la "Nota"). El Demandante afirmó que en la Nota se le imputó "incurrir en conducta inmoral, hostil y constitutiva de hostigamiento sexual". A pesar de que aceptó que en la Nota no se le identificó "por nombre", el Demandante sostuvo que, "posteriormente", en un programa radial, el Columnista "realizó expresiones que confirmaban" que la Nota "era en referencia" a él. Sostuvo que la Nota contenía expresiones de hecho falsas y maliciosas que sirvieron para lacerar su imagen y buen nombre.

El Demandante arguyó que el Columnista "realizó dichas expresiones falsas con conocimiento de su falsedad, o mediando grave menosprecio a si eran falsas o no", y que el Vocero publicó la Nota "sin ninguna verificación". Además, afirmó que, debido a la publicación de la Nota, fue destituido de su puesto como director ejecutivo de la Compañía de Turismo de Puerto Rico. Añadió que la publicación de la Nota fue "muy poco tiempo después de que" él "ordenara" una "investigación interna exhaustiva" sobre "manejos turbios de fondos públicos" por parte de una corporación de la cual el Columnista era el "principal oficial".

En vista de lo anterior, el Demandante solicitó una compensación de $5,000,000 por concepto de los daños que presuntamente sufrió como resultado de la publicación de la Nota; $1,000,000 por las angustias mentales, y $300,000 por la pérdida de ingresos.

Al cabo de varios trámites procesales que no es necesario pormenorizar, el 13 de noviembre de 2024, el Demandante instó una *Moción en Solicitud de Orden para Compeler Contestaciones a Preguntas Objetadas Durante Toma de Deposición de Enrique (Kike) Cruz* (la "Moción", véase entrada núm. 128 en SUMAC). En la misma, solicitó al TPI que ordenase al Columnista contestar ciertas preguntas que este objetó durante la toma de su deposición el 17 de septiembre de 2024. Las preguntas se dividieron en ocho temas.

El 26 de noviembre, el Columnista se opuso a la Moción. En lo pertinente, arguyó que el Demandante no había demostrado que la Nota se refiriera a este. Subrayó que, según la doctrina de "of and concerning the plaintiff", en las reclamaciones de difamación, la parte demandante tiene el peso de demostrar que una persona prudente y razonable que lee la publicación lo identificaría como el sujeto de las expresiones difamatorias. Por consiguiente, el Columnista postuló que las preguntas en controversia no trataban sobre materia pertinente.

El 18 de diciembre, el Demandante replicó; planteó que la doctrina de identificación razonable ("of and concerning the plaintiff") no requiere que un escrito identifique al demandante por su nombre, sino que basta con que los hechos publicados permitan que el lector concluya, razonablemente, que se refiere a este o que la identidad del demandante pueda verificarse del texto y el contexto de la publicación. El Demandante también arguyó que parte de la información solicitada al Columnista en la deposición era pertinente, precisamente, a la controversia sobre si la Nota se refiere al Demandante aunque no lo nombre.

El 9 de enero de 2025, el Columnista presentó una *Dúplica*, en la cual reprodujo lo planteado en su oposición a la Moción.

El 24 de marzo, el TPI notificó una *Resolución y Orden* (el "Dictamen"), mediante el cual denegó la Moción, excepto en cuanto

a una de las preguntas en controversia (la número 5). El TPI razonó que el Columnista está cobijado por el privilegio cualificado de periodista "debido a que recopila y analiza información regularmente sobre eventos locales y nacionales de alto interés público, con el propósito de diseminarla entre la ciudadanía".[2] El TPI determinó que dicho privilegio aplicaba a las preguntas número 2, 3 y 4[3], pues iban dirigidas a revelar las fuentes de información del Columnista, y el Demandante no demostró que estuviesen presentes las circunstancias que justificarían ordenar el descubrimiento como excepción a la aplicación del referido privilegio.[4]

Por otra parte, en cuanto a las preguntas 1, 6 y 7, determinó que las mismas no eran pertinentes; en cuanto a la pregunta número 8, razonó que esta ya había sido contestada. No obstante, el TPI sí ordenó al Columnista contestar la pregunta número 5, por considerarla pertinente y no tratar sobre materia privilegiada. Eventualmente, el 28 de julio de 2025, el Columnista sometió al TPI una Declaración Jurada mediante la cual sometió su contestación a la pregunta número 5.

El 8 de abril, el Demandante solicitó la reconsideración del Dictamen, lo cual fue denegado por el TPI mediante una Resolución notificada el 15 de mayo.

En desacuerdo, el 12 de junio (jueves), el Demandante presentó el recurso que nos ocupa; formula el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al denegar la solicitud de información presentada por el Peticionario, a pesar de que dicha información era esencial para su reclamación, tras concluir erróneamente el Sr. Kike Cruz estaba cobijado por el privilegio del periodista, sin que éste demostrara cumplir con los requisitos para acogerse a dicho privilegio.

---

[2] Véase, *Resolución y Orden*, Apéndice 1 del recurso de *certiorari*, pág. 20.
[3] Más adelante, incluiremos el texto de las preguntas en controversia.
[4] *Íd.*, a la pág. 21.

Luego de que le ordenáramos al Columnista mostrar causa por la cual no debíamos expedir el auto solicitado y revocar el Dictamen, el Columnista presentó su postura. Resolvemos[5].

## II.

La tendencia moderna en el ámbito del procedimiento civil es a facilitar el descubrimiento de prueba de forma tal que se coloque al juzgador en la mejor posición posible para resolver justamente. *Autopistas P.R. v. A.C.T.*, 167 DPR 361, 379 (2006); *E.L.A. v. Casta,* 162 DPR 1, 9 (2004); *Ward v. Tribunal Superior,* 101 DPR 865, 867 (1974). Consecuentemente, el mismo debe ser amplio y liberal para que sirva de instrumento para acelerar los procedimientos, propiciar transacciones y evitar sorpresas en el juicio. *Izquierdo II v. Cruz y otros*, 213 DPR 607 (2024) (citas omitidas); *McNeil Healthcare v. Mun. Las Piedras II,* 206 DPR 659, 672 (2021); *E.L.A. v. Casta*, 162 DPR a la pág. 10.

El descubrimiento de prueba se extiende a toda materia, no privilegiada, que sea pertinente al asunto en controversia. Regla 23.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1. El concepto de pertinencia, cuando es aplicado al descubrimiento de prueba, resulta ser mucho más amplio que el utilizado bajo los criterios de admisibilidad de evidencia conforme a los principios que rigen el derecho probatorio. *Alvarado v. Alemañy*, 157 DPR 672, 683 (2002). "[P]ara que una materia pueda ser objeto de descubrimiento,

---

[5] El Columnista solicitó la desestimación del recurso presentado por el Demandante porque la totalidad del mismo no se notificó dentro del término de cumplimiento estricto aplicable. Hemos determinado denegar esta solicitud. Subrayamos que, el mismo día en que se presentó el recurso, el hecho de su presentación, junto a su carátula, fue adecuadamente notificado al Columnista a través de la moción presentada por el Demandante en el TPI (SUMAC, entrada núm. 191). Aunque no haber notificado la totalidad del recurso dentro del término aplicable es un defecto de notificación, no estamos ante una ausencia de notificación dentro de dicho término. Véase, por ejemplo, 4 LPRA sec. 24w (requiriendo "reducir al mínimo" los recursos desestimados por "**defectos** de forma o **de notificación**") (énfasis suplido). En efecto, el mandato estatutario es proveer una "oportunidad razonable para la corrección de defectos de forma o de notificación que no afecten los derechos de las partes". 4 LPRA sec. 24w (énfasis suplido). Tampoco se ha planteado que el referido defecto haya afectado los derechos del Columnista a defenderse oportunamente y adecuadamente en este trámite.

basta con que exista una posibilidad razonable de relación con el asunto en controversia." *Íd.*; *Vincenti v. Saldaña*, 157 DPR 37, 54 (2002); *Alfonso Brú v. Trane Export, Inc.*, 155 DPR 158, 167 (2001).

A tal efecto, aun si se trata de información pertinente, le corresponde al tribunal "evaluar si se configuran los requisitos para el reconocimiento de algún privilegio". *Izquierdo II*, 213 DPR a la pág. 617. Con relación a la "materia privilegiada" a la cual alude la referida Regla 23.1, *supra*, se trata de privilegios que deben surgir de la ley, es decir de la Constitución, de las reglas de evidencia o de las leyes especiales. *Íd.*, citando a E.L. Chiesa Aponte, <u>Tratado de derecho probatorio: Reglas de Evidencia de Puerto Rico y federales</u>, República Dominicana, Ed. Corripio, [s. año], T. I, pág. 188.

En *Izquierdo II*, 213 DPR a la pág. 611, se adoptó en Puerto Rico el "privilegio cualificado del periodista". Se determinó que, si se demostrase la pertinencia de la identidad de una fuente periodística, les corresponde a los tribunales evaluar los siguientes tres (3) criterios para decidir si aplicará (o no) el referido privilegio:

> **"[...] si la parte interesada en descubrir la información solicitada ha presentado prueba alguna para establecer: (1) que lo publicado es falso y difamatorio; (2) que empleó esfuerzos razonables para descubrir la fuente o la información confidencial por otros medios, y (3) que es necesario conocer la identidad de la fuente o la información confidencial para establecer su causa de acción**. *Izquierdo II*, 213 DPR a la pág. 630.

Es decir, si se establecen estos requisitos, el privilegio cualificado del periodista a no divulgar la identidad de sus fuentes periodísticas o información confidencial "**quedaría superado por el interés de la parte que demuestra la necesidad de la divulgación, por lo que el periodista podrá ser compelido a producir la información solicitada**". (Énfasis en el original). *Izquierdo II*, 213 DPR a la pág. 630.

III.

En una causa de acción por difamación se contraponen dos derechos constitucionales fundamentales. Por un lado, el derecho a la libertad de expresión y de prensa, las cuales son "vitales, para la existencia misma de la democracia". *Pérez Vda. de Muñiz v. Criado Amunategui*, 151 DPR 355, 367 (2000), citando a *Aponte Martínez v. Lugo*, 100 DPR 282 (1971); véase, además, *Pueblo v. Burgos*, 75 DPR 551, 570 (1953).

Por el otro lado, tenemos el principio de la inviolabilidad de la "dignidad del ser humano" y el derecho de una persona a "protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". Artículo II, Secs. 1, 4 y 8 de la Constitución del Estado Libre Asociado de Puerto Rico, ELA. Const. PR, Art. II, Secs. 1, 4 y 8, 1 LPRA.

Nuestro ordenamiento jurídico reconoce la causa de acción por daños y perjuicios por la publicación de información libelosa o difamatoria bajo el Artículo 1802 del Código Civil,[6] 31 LPRA sec. 5141 y la Ley de 19 de febrero de 1902, conocida como Ley de Libelo y Calumnia de Puerto Rico (la "Ley de Libelo y Calumnia"), 32 LPRA secs. 3142 *et seq.* Para que proceda una acción de libelo se requiere que exista un récord permanente de la expresión difamatoria. Por su parte, la calumnia se configura con la mera expresión oral difamatoria. *Pérez v. El Vocero de P.R.*, 149 DPR 427, 441 (1999); *Ojeda Ojeda v. El Vocero*, 137 DPR 315, 326 (1994). En esencia, se penaliza la publicación de información falsa que afecta adversamente la imagen de la persona en la comunidad y le produce daños. *Villanueva v. Hernández Class*, 128 DPR 618, 642 (1991).

---

[6] Hacemos referencia al derogado Código Civil de 1930 por encontrarse vigente al momento de publicarse la columna que originó la controversia entre las partes. En la actualidad la causa de acción por daños y perjuicios por información libelosa o difamatoria debe dilucidarse bajo el Artículo 1536 del Código Civil, 31 LPRA sec. 10801 del Código Civil.

Para que exista libelo resulta indispensable que la comunicación asevere una cuestión de hecho cuya falsedad pueda ser establecida. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 148 (2013); *Asoc. Med. Podiátrica v. Romero*, 157 DPR 240, 246 (2002); *Soc. de Gananciales v. El Vocero de P.R.*, 135 DPR 122, 128 (1994). Expresiones de opinión que no aseveran hechos, hipérboles retóricas y otro tipo de manifestaciones, que no contienen aseveraciones que puedan ser ciertas o falsas, gozan de protección constitucional. *Colón, Ramírez v. Televicentro de P.R.*, 175 DPR 690, 712 (2009); *Asoc. Med. Podiátrica, supra.* Lo anterior, incluye las parodias y otras expresiones humorísticas. *Garib Bazain v. Clavell*, 135 DPR 475, 492 (1994).

Otra exigencia de rango constitucional es que la expresión se refiera a la persona del demandante de modo particular, requisito conocido en el Derecho Común como "of and concerning the plaintiff". *Meléndez Vega*, 189 DPR a la pág. 148, citando a *Colón, Ramírez*, 175 DPR a las págs. 720, 726; *Soc. de Gananciales v. El Vocero de P.R.*, 135 DPR a las págs. 128-133; *New York Times Co. v. Sullivan*, 376 D.P.R. 254, 288-292 (1964). Este requisito limita el derecho a demandar por falsedad injuriosa, puesto que concede tal derecho a aquellos que son realmente objeto directo de críticas, y se les niega a aquellos que meramente se quejan por manifestaciones no específicas que creen que los perjudican. *Soc. de Gananciales*, 135 DPR a las págs. 128-129 citando a *Blatty v. New York Times Co.*, 728 P.2d 1177 (Cal. 1986). Destacamos que este requisito no exige que la parte demandante sea mencionada por nombre y apellido, ni que cada lector reconozca que dicha parte es el objeto de difamación. *Meléndez Vega*, 189 DPR a la pág. 164 citando a *Colón, Ramírez*, 175 DPR a la pág. 722 n. 28; D. A. Elder, *Defamation: A Lawyer's Guide*, Deerfield, Illinois, Clark Boardman Callaghan, 1993, págs. 1-136.

La difamación se ha definido como desacreditar a una persona publicando cosas contra su reputación. *Pérez,* 149 DPR a la pág. 441. La doctrina de difamación reconoce dos vertientes, cada una con sus respectivas exigencias constitucionales, conforme la clasificación del demandante como funcionario o figura pública o como persona privada. *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 147 (2013). Así pues, para que prospere una acción por difamación, se requiere que el demandante pruebe lo siguiente:

> (1) la falsedad de la información publicada; (2) los daños reales sufridos a causa de dicha publicación; (3) si el demandante es una figura privada, hay que demostrar que las expresiones fueron hechas negligentemente, y (4) si el demandante es una figura pública, en vez, hay que demostrar que las expresiones se hicieron con malicia real, es decir, a sabiendas de que era falso o con grave menosprecio de si era falso o no. *Garib Bazain v. Clavell,* 135 DPR 475, 482 (1994).

Como vemos, el alcance de la responsabilidad varía dependiendo de si la persona objeto de la publicación es una figura o funcionario público o, alternativamente, una persona privada. Cuando el reclamante es una persona privada, el demandado responde si la publicación se produjo de forma negligente. *Colón, Ramírez,* 175 DPR a la pág. 706; *Torres Silva v. El Mundo, Inc.,* 106 DPR 415, 423-424 (1977). Por otro lado, en el caso de una figura pública, el reclamante tiene que probar que la expresión fue publicada con malicia real, esto es, con conocimiento de que la información era falsa o con grave menosprecio de su veracidad. *Meléndez Vega, supra*; *Garib Bazain,* 135 DPR a la pág. 482. La malicia real debe probarse "mediante prueba clara y convincente". *Íd.,* a la pág. 484.

Se considera que una persona es figura pública cuando, por su prominencia en la comunidad, goza de acceso a los medios de comunicación para exponer y adelantar sus puntos de vista, lo cual, como resultado, la expone a un escrutinio público constante. *Garib Bazán,* 135 DPR a la pág. 483; véase, además, *Gertz v. Welch,* 418

U.S. 323, 345 (1974). Ahora bien, existen diversos tipos de figura pública: la persona que, por su posición oficial, su poder o su participación en asuntos públicos, ha alcanzado fama o notoriedad en la comunidad; la persona que voluntariamente participa en una contienda o controversia pública; o la persona que involuntariamente se convierte en un personaje público, por ejemplo, por haber sido acusado de un delito. *González Martínez v. López*, 118 DPR 190, 195 (1987), citando a *Gertz v. Welch, supra.* Asimismo, una persona puede ser catalogada como una figura pública dentro del contexto de una comunidad o territorio particular. Véase, *Maldonado y Negrón v. Marrero Blanco*, 121 DPR 705, 716 (1988). Cualquier ciudadano privado puede ser considerado como una figura pública "si adquiere el grado de notoriedad necesaria." *Garib Bazán*, 135 DPR a las págs. 483-484. La determinación de si una persona es una figura pública es una de derecho. Véase, *Oliveras v. Paniagua Diez*, 115 DPR 257, 270 (1984), citando a *Rosenblatt v. Baer*, 383 U.S. 75, 84 (1966).

IV.

Concluimos que es pertinente todo descubrimiento dirigido a arrojar luz sobre (i) si la Nota sería razonablemente percibida como una relacionada con el Demandante y (ii) si son ciertos los hechos expuestos en la Nota. Ambas controversias son medulares en términos de las alegaciones de la Demanda. A su vez, si dicho descubrimiento no pretende la divulgación de materia privilegiada, el mismo debe ser contestado.

Por tanto, el Columnista debe contestar la pregunta número 1, la cual va dirigida a que este revele quién él entiende que participó de unos "viajes a China", a los cuales se hacen referencia en la Nota. En efecto, en la Nota se declara que al Columnista le hicieron un "cuento" sobre "viajes a China, acosos por todos lados, un vídeo del viaje a China".

En su deposición, se le preguntó al Columnista "quiénes eran los que iban a esos viajes a China", y el Columnista se negó a contestar, a pesar de indicar que sabía quiénes eran y de aseverar que no se trataba del Demandante. Apéndice del recurso, a las págs. 517-519. La contestación a esta pregunta (i) arrojaría luz sobre si es cierto o falso lo aseverado en la Nota y (ii) no comprometería de forma alguna la fuente de la información que el Columnista decidió compartir a través de la Nota, por lo cual no está involucrado aquí de forma alguna el privilegio del periodista. La información requerida, al tratarse de detalles sobre lo ya aseverado en la Nota, permitiría desarrollar más adecuadamente el récord en cuanto al asunto medular sobre la veracidad del contenido de la misma.

De forma similar, el Columnista debe contestar las preguntas 6 y 7, las cuales van dirigidas a que este revele a quién se refirió como el "encubridor" en la Nota. Apéndice del recurso a las págs. 489-492. En efecto, en la Nota se asevera que existía un "encubridor" del "acoso" al que se hace referencia. A su vez, en la deposición, el Columnista aseveró que sabía quién era el "encubridor", pero que no lo revelaría. *Íd.* No obstante, la contestación a esta pregunta podría arrojar luz sobre, o podría llevar al descubrimiento de evidencia pertinente relacionada con, la controversia en torno a la verdad o falsedad de lo aseverado en la Nota. A la misma vez, contestar esta pregunta, la cual va dirigida a obtener detalles más específicos sobre lo que el Columnista decidió aseverar en la Nota, tampoco conlleva riesgo alguno de revelar, ni va dirigida a que se revele, la fuente de información del Columnista, por lo que no está presente asunto alguno relacionado con el privilegio del periodista.

En cuanto a la pregunta número 8, igualmente concluimos que se trata de materia pertinente y no privilegiada. La misma va dirigida a que el Columnista divulgue detalles adicionales sobre el

"vídeo" al cual hace referencia en la Nota. Específicamente, se le requirió que indicara qué le habían manifestado a él sobre el contenido del vídeo[7]. El Columnista admitió que le habían "conta[do]" lo que había en el vídeo, pero que no lo revelaría. Apéndice del recurso a las págs. 521-522. No obstante, la contestación a esta pregunta arrojaría luz sobre, o podría llevar al descubrimiento de evidencia pertinente relacionada con, la controversia en torno a la verdad o falsedad de lo aseverado en la Nota. A la misma vez, contestar esta pregunta, la cual va dirigida a obtener detalles más específicos sobre lo que el Columnista decidió aseverar en la Nota, tampoco conlleva riesgo alguno de revelar, ni va dirigida a que se revele, la fuente de información del Columnista, por lo que no está presente asunto alguno relacionado con el privilegio del periodista.

Ahora bien, en esta etapa, no procede obligar al Columnista a contestar las preguntas 2, 3 y 4, las cuales van dirigidas a que el Columnista revele la identidad de sus fuentes. Véanse págs. 467 & 476-480 del Apéndice del recurso. Esta determinación requeriría pasar juicio sobre la aplicación, en las circunstancias particulares de este caso, del privilegio reconocido en Izquierdo II, *supra*.

Sin embargo, lo más prudente es que el TPI, en esta etapa del caso, y luego de una vista evidenciaria (si resultase necesario), primero adjudique (i) si la Nota podría razonablemente entenderse como relacionada con el Demandante y, de ser así, (ii) si sus aseveraciones fácticas son falsas. Adviértase que, si luego de desarrollado el récord, se determinase que la Nota no satisface el requisito de "of and concerning the Plaintiff", procedería la desestimación de la Demanda, sin que se tenga que adjudicar nada

---

[7] Contrario a lo razonado por el TPI, no tiene pertinencia que el Columnista haya aseverado que no vio el vídeo. Ello pues se le preguntó qué era lo que le contaron sobre el contenido del vídeo al cual el Columnista determinó hacer referencia en la Nota. Esta información claramente es pertinente y está dentro del ámbito permisible de lo que puede ser objeto de descubrimiento en este contexto.

en cuanto al contenido de la Nota, ni mucho menos si, en este caso, el privilegio del periodista le permitiría al Columnista abstenerse de revelar sus fuentes.

De forma similar, si se determinase que la Nota sí podía ser razonablemente considerada por un lector como referente al Demandante, pero se determinara que el contenido de la Nota es cierto, también procedería la desestimación de la Demanda, sin que se tenga que adjudicarse lo relacionado a la aplicación del referido privilegio en el contexto de las preguntas 2, 3 y 4.

Únicamente si el TPI concluyese, luego de los debidos trámites, que la Nota se podía entender como relacionada con el Demandante y, además, que su contenido es falso, es que sería necesario que dicho foro adjudique, ya con el beneficio de un récord mucho más desarrollado, si el privilegio beneficia (o no) al Columnista en cuanto a la información requerida mediante las preguntas 2, 3 y 4.[8]

V.

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se modifica la *Resolución y Orden* recurrida a los fines de ordenar al demandado (Sr. Cruz) contestar las preguntas relacionadas con los asuntos 1, 6, 7 y 8, según expuestos en la Moción, y según arriba resuelto. El tribunal podrá, si las partes lo solicitan, dentro de su discreción, tomar medidas cautelares para controlar la divulgación de la información que provea el demandado. Se devuelve el caso al Tribunal de Primera Instancia para la

---

[8] Ello implicaría determinar si el Columnista es acreedor del privilegio del periodista. Luego, el TPI tendría que determinar si la información confidencial o la identidad de las fuentes son pertinentes. En tal caso, le correspondería a dicho foro evaluar si el Demandante empleó esfuerzos razonables para descubrir la fuente o la información confidencial por otros medios, y si es necesario conocer la identidad de la fuente o la información confidencial para establecer su causa de acción, de tal modo que proceda descubrir la información o fuentes confidenciales solicitadas. *Izquierdo II*, 213 DPR a la pág. 630.

continuación de los procedimientos de forma compatible con lo aquí dispuesto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones