EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Medicina Podiátrica de Puerto Rico <br>    Demandante-Recurrido <br><br> v. <br><br> Dr. Juan Romero Bassó <br>   Demandado-Peticionario | Certiorari <br><br> 2002 TSPR 80 <br><br> 157 DPR _____ |

Número del Caso: CC-2000-517


Fecha: 18/junio/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional I


Juez Ponente:
                    Hon. Guillermo Arbona Lago



Abogadas de la Parte Peticionaria:
                    Lcda. Marie L. Quiñones Tañón
                    Lcda. Mirta E. Rodríguez Mora


Abogados de la Parte Recurrida:
                    Lcdo. Francisco Ortiz Santini
                    Lcdo. Juan R. Marchand Quintero



Materia: Sentencia Declaratoria




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Medicina
Podiátrica de Puerto Rico

    Demandante recurrrido

      v.                           CC-2000-517

Dr. Juan Romero Bassó

    Demandado peticionario

Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN.

**San Juan, Puerto Rico a 18 de junio de 2002**

     *La base principal de la Primera Enmienda descansa en la hipótesis de que la palabra será refutada por la palabra, la propaganda será contestada con propaganda, y el debate libre de ideas resultará en las políticas gubernamentales más sabias.* *(Énfasis suplido y traducción nuestra.)* *Dennis v. United States, 341 U.S. 494, 503 (1951). Véase, además: American Communications Association v. Douds, 339 U.S. 382, 407 (1950).*[1]

I

    **El 17 de mayo de 1999, la Asociación de Medicina Podiátrica de Puerto Rico (en adelante la Asociación) presentó una demanda contra el médico ortopeda, Dr. Juan Romero Bassó (en adelante peticionario), en el Tribunal de Primera Instancia, Sala Superior de San Juan. La acción se basa en una supuesta "campaña de descrédito" dirigida por el peticionario en la cual pone en entredicho no sólo la pericia y la capacidad de los podiatras para atender problemas de salud en los pies, sino también la legalidad del ejercicio de esta actividad**

---

[1]    [t]he basis of the First Amendment is the hypothesis that speech can rebut speech, propaganda will answer propaganda, free debate of ideas will result in the wisest governmental policies. *Dennies v. United States*, 341 U.S. 494, 503 (1951)

**profesional.  Solicitó, que mediante sentencia declaratoria, se le ordenara al peticionario abstenerse de continuar con su campaña de descrédito contra los podiatras y que publicara un extracto de dicha sentencia en un periódico de circulación general pagado con su propio peculio.**

El peticionario contestó la acción y solicitó la desestimación de la demanda alegando que bajo el subterfugio de una sentencia declaratoria, la Asociación pretendía un remedio interdictal, lo que equivaldría a imponerle una mordaza en violación de sus derechos constitucionales a la libre expresión.

La Asociación se opuso a la desestimación.  Sostuvo que la causa de acción estaba dirigida a buscar un remedio preventivo contra las manifestaciones falsas del peticionario que "no poseen protección bajo el manto de la libertad de expresión y están sujetas, por consiguiente, a ser prevenidas mediante los mecanismos legales disponibles...".

Celebrada la vista, el 29 de octubre de 1999, el tribunal de instancia dictó una sentencia sumaria mediante la cual desestimó la demanda.  Determinó que lo que pretendía la Asociación era que se emitiera una opinión consultiva y una orden interdictal, sin cumplir con los requisitos necesarios para la misma.  Señaló, además, que dicha orden atentaría contra el derecho a la libre expresión del peticionario.

La Asociación acudió entonces al Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) mediante recurso de apelación.  La mayoría de dicho tribunal revocó el dictamen del foro de instancia y le devolvió el caso para que continuara los procedimientos.[2]

---

[2]     El Juez, Hon. German J. Brau Ramírez disintió con opinión escrita.

Denegada la reconsideración, el peticionario acudió ante nos mediante recurso de certiorari. El 31 de julio de 2000 expedimos el recurso y, con el beneficio de los argumentos de las partes, resolvemos sin ulterior procedimiento.

II

El derecho a la libre expresión, garantizado por nuestra Constitución y la Primera Enmienda de la Constitución de Estados Unidos, tiene como principio fundamental "la libertad de conciencia... y supone el intento de proteger jurídicamente el libre desenvolvimiento de la personalidad a través de los medios más eficaces y habituales de exteriorización de los contenidos de conciencia." *La Nueva Constitución de P.R.*; Editorial de la U.P.R., pág. 205 (1954).[3] En virtud de dicho derecho los ciudadanos disfrutan de la plenitud de manifestarse en términos críticos en torno a asuntos sociales que les preocupen, lo que fomenta la comunicación y el libre intercambio de ideas. Véase, Antieau, Chester, J., *Modern Constitutional Law*, Vol. I, sec. 1.00-1.03, págs. 4-8 (1997). De ahí que haya sido descrito como uno de los derechos fundamentales del ser humano, que goza de supremacía en nuestra jerarquía constitucional. Mari Brás v. Casañas, 96 D.P.R. 15, 20-21 (1968); Aponte Martínez v. Lugo, 100 D.P.R. 282, 286 (1971). Véanse: además, Ramírez de Ferrer v. Mari Brás, 144 D.P.R. 141, 204 (1997).

> [L]a Libertad de expresión protege el derecho del individuo particular a exteriorizar como guste los contenidos de su conciencia, al mismo tiempo que establece la premisa indispensable para la formación de opinión pública, sobre cuyo régimen está fundado el gobierno democrático. *La Nueva Constitución*, op. cit., pág. 205.

---

[3] La Sec. 4, Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1999, pág. 269, dispone que "[n]o se aprobará ley alguna que restrinja la libertad de palabra o de prensa o el derecho del pueblo a reunirse en asamblea pacífica y a pedir al gobierno la reparación de agravios." De otra parte, la Primera Enmienda de la Constitución de Estados Unidos dispone que "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." Constitution of the United States, First Amendment, L.P.R.A., Tomo 1, ed. 1999, pág. 180 (versión traducida).

No obstante su importancia, su ejercicio "... no supone una irrestricción absoluta de forma que no puedan subordinarse a otros intereses cuando la necesidad y la conveniencia públicas así lo requieran." <u>Mari Brás</u> v. <u>Casañas</u>, supra.[4]

III

El asunto ante nos tiene su génesis en una demanda en solicitud de sentencia declaratoria instada por la Asociación contra el peticionario. La acción está fundada en una alegada "campaña de descrédito" conducida por el peticionario contra los podiatras de nuestra jurisdicción, "cuestionando su pericia profesional para atender dolencias del pie y la licitud de este tipo de práctica profesional." Se alega que el peticionario "ha hecho expresiones a pacientes en privado, a proveedores de servicios, a instituciones hospitalarias y ante medios de comunicación pública cuestionando la pericia y capacidad de algunos podiatras en particular y, la legalidad del ejercicio profesional de todos los podiatras en general para atender problemas de salud en los pies." Se aduce que esta "cruzada" del peticionario "está basada en su cuestionamiento continuo de la preparación académica y práctica de los podiatras *vis á vis* la de los doctores en medicina."

Como se puede observar, el peticionario ha sido demandado por haber expresado públicamente que los podiatras no están capacitados para atender problemas de salud en los pies, por lo que el ejercicio de dicha

---

[4] Sobre este particular, en <u>Dennis</u> v. <u>United States</u>, supra, el Tribunal Supremo Federal expresó que "[a]n analysis of the leading cases in this Court which have involved direct limitations on speech, however, will demonstrate that both the majority of the Court and the dissenters in particular cases have recognized that this is not an unlimited, unqualified right, but that the societal value of speech must, on occasion, be subordinated to other values and considerations."

especialidad es "ilegal". Estas manifestaciones están protegidas por la garantía a la libertad de expresión establecida por nuestra Constitución, así como por la Primera Enmienda a la Constitución de Estados Unidos. Sec. 4, Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1999, pág. 269; Constitution of The United States, First Amendment, L.P.R.A., Tomo 1, ed. 1999, pág. 180 (versión traducida). Esto, aun cuando dichas expresiones causen disgustos a la Asociación.[5]

Aún así, la mayoría del Panel del Tribunal de Circuito resuelve que al peticionario no lo protege el derecho de la libertad de expresión porque se le imputa haber aseverado que la práctica de la podiatría es **"ilegal"**, lo que resulta ser un hecho falso, ya que, según se implica en la demanda, dicha especialidad está reconocida y reglamentada por ley. Véase, Ley Núm. 170 de 29 de julio de 1979, según enmendada, 20 L.P.R.A. secs. 2851 y ss.). Erró la Mayoría del Tribunal de Circuito al así resolver.


**IV**

En <u>Garib Bazán</u> v. <u>Clavell</u>, 135 D.P.R. 475 (1994), este Foro, utilizando como base la casuística del Tribunal Supremo de Estados Unidos, adoptó las doctrinas de **la opinión** y de **la hipérbole retórica** como defensas en los casos en los que se plantee el derecho a la libertad de expresión y de prensa. Definimos la primera como una expresión sobre cuestiones de interés público que no contienen una connotación

---

[5] En cuanto a la extensión del derecho de la libertad de expresión, se ha enfatizado la importancia y necesidad del "debate robusto y abierto sobre la cosa pública, debate que ...`bien puede incluir ataques vehementes cáusticos y a veces desagradablemente cortantes...'". <u>Soc. de Gananciales</u> v. <u>López</u>, 116 D.P.R. 112, 115 (1985). Véanse, además: <u>Garib</u> v. <u>Clavell</u>, 135 D.P.R. 475 (1994);

fáctica que sea susceptible de ser probada como falsa. Es decir, están protegidas las expresiones que no pueden ser razonablemente interpretadas como que expresan hechos reales. Véase, Garib Bazán v. Clavell, supra, págs. 489-490. En cuanto a la "hipérbole retórica" señalamos que ésta constituye una expresión alegadamente difamatoria que no es accionable si se utiliza en sentido figurativo, flexible y no necesariamente por su significado literal. Garib Bazán v. Clavell, supra, págs. 485-486. En cuanto a esta última, el Profesor y tratadista Melville B. Nimmer expresó lo siguiente:

> In determining whether a statement is in fact false, it is sometimes necessary to look beyond the literal meaning of the words in order to determine the message in fact communicated. If it is manifest that if the speaker is engaging in hyperbole, then an appropriate discounting of literal meaning must be made. Thus, "the overenthusiastic use of rhetoric" will not divest the speech of First Amendment protection, even though in a sense the speech involves knowing falsity. Such hyperbole is particularly likely to arise in the realms of religious faith and political belief. The Supreme Court has observed that in both these fields "the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement. But the people of this nation have ordained in the light of history that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and the right conduct on the part of the citizens of a democracy." (Citas omitidas.) Nimmer M, *Nimmer On Freedom of Speech: A Treatise on the Theory of First Amendment*, 1984, Sec. 3.03[B][4], págs. 3-24 a 3-25 (Falsification by Hyperbole)[6]

Al aplicar las doctrinas antes expuestas al caso de autos, resulta forzoso concluir que la expresión de que la práctica de la podiatría es "ilegal" no constituye una materia de hecho, sino de una materia de opinión, basada según se indica en la demanda, en [el] cuestionamiento continuo [del peticionario] de la preparación

---

Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990); Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-340 (1974).

académica y práctica de los podiatras, *vis á vis* la de los doctores en medicina." Más aún, examinado el contenido total de la demanda, es obvio que la palabra "ilegal" se ha utilizado en sentido figurado y no por su significado literal.

Manifestaciones como éstas son comunes en la discusión de los asuntos públicos en nuestro país, sin que se entienda que se trata de afirmaciones fácticas. Las mismas constituyen, más bien, un juicio valorativo crítico sobre la cuestión en controversia que no pueden ser suprimidas bajo el fundamento de que se trata de aseveraciones falsas. A través de nuestra jurisprudencia, hemos reconocido que "[l]a expresión sobre asuntos de **interés público** protegida por la libertad de expresión, es la que atañe a asuntos de interés político, social u otra índole para nuestra comunidad." (Énfasis en el original y citas omitidas.) Hernández v. J. Apel. Sist. Educ. Púb., Op. de 24 de marzo de 1999, 147 D.P.R.___ (1999), 99 JTS 34, a la pág. 753.

V

Finalmente, la Asociación suplica al foro de instancia que, como remedio ante la conducta imputada al peticionario, dicte sentencia "a los fines de resolver como cuestión de derecho que el demandado [peticionario]... debe abstenerse de continuar con su campaña de descrédito contra los podiatras, en tanto dicha campaña está dirigida a sostener que éstos están ejerciendo ilegalmente la medicina podiátrica en Puerto Rico, además de desprestigiar públicamente su educación y entrenamiento. [También] se solicita... que, una vez advenga final y firme el remedio declaratorio aquí interesado, se le ordene al referido demandado publicar en un periódico de circulación

---

[6] Véase traducción de esta expresión, la cual fue citada con aprobación, en Garib Bazain v. Clavell, 135 D.P.R. 475, 486 (1994).

general en Puerto Rico, un extracto del contenido de la sentencia pagado con su propio peculio."

No cabe duda alguna que este tipo de remedio es improcedente bajo la garantía constitucional a la libertad de expresión. Constituye, no sólo una penalidad a las ideas y opiniones del peticionario, sino una censura previa a las expresiones futuras de éste. Aponte Martínez v. Lugo, supra, a las págs. 287-288. Véase, además, Serrano Geyls, R., *Derecho Constitucional de Estados Unidos y Puerto Rico*, Vol. II, Colegio de Abogados de Puerto Rico, 1988, págs. 1562 y ss.

Este Tribunal, al igual que el Tribunal Supremo de Estados Unidos, ha rechazado enérgicamente las tentativas de censura previa, especialmente cuando se han pretendido llevar a cabo mediante interdictos (injunctions). Aponte Martínez v. Lugo, supra. Véanse, además: New York Times Co. v. United States, 403 U.S. 713, (1971) y N.A.A.C.P. v. Claiborne Hardware Co., 458 U.S. 886 (1982).

Finalmente hemos reiterado que los **mecanismos sumarios** son parte integral de la protección constitucional disponible a los demandados en los litigios sobre el ejercicio de libertad de expresión y prensa. Pérez v. El Vocero de P.R., Op. de 11 de octubre de 1999, 149 D.P.R.__ (1999), 99 J.T.S. 160 pág. 267; Clavell v. El Vocero de P.R., 115 D.P.R. 685 696 (1984). Véanse, además, Méndez Arocho v. El Vocero de P.R., 130 D.P.R. 867, 874 (1992) y Villanueva v. Hernández Class, 128 D.P.R. 618, 643 (1991).

VI

A la luz de todo lo anterior, podemos colegir que las alegadas expresiones del Dr. Juan Romero Bassó afirmando que los podiatras están ejerciendo ilegalmente la medicina, deben interpretarse como una materia de opinión, basada en el cuestionamiento de la preparación

académica de los podiatras en comparación a la de los médicos ortopedas. En este contexto, la palabra "ilegal" no puede tomarse en su significado literal, sino como un juicio valorativo crítico de la materia en discusión.

El tratar de penalizar al doctor Romero Bassó, quien es un ciudadano particular, por sostener una opinión contraria a los intereses de la Asociación de Medicina Podiátrica de Puerto Rico es violentar la garantía a la libertad de expresión. Procedía, pues, el mecanismo de sentencia sumaria para desestimar la acción.

## VII

Por las razones antes expuestas se dictará sentencia revocando la emitida por el Tribunal de Circuito y se confirmará el dictamen del Tribunal de Primera Instancia, Sala Superior de San Juan, mediante el cual se desestimó la demanda.


Miriam Naveira de Rodón
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Medicina
Podiátrica de Puerto Rico

    Demandante recurrrido

       v.                        CC-2000-517

Dr. Juan Romero Bassó

    Demandado peticionario


SENTENCIA


**San Juan, Puerto Rico a 18 de junio de 2002**


    Por los fundamentos expuestos en la Opinión que antecede, se revoca la sentencia emitida por el Tribunal de Circuito y se confirma el dictamen del Tribunal de Primera Instancia, Sala Superior de San Juan, mediante el cual se desestimó la demanda.

    Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton concurrió con el resultado sin opinión escrita. El Juez Asociado señor Rivera Pérez disintió sin opinión escrita. El Juez Asociado señor Rebollo López no interviene.


                    Patricia Otón Olivieri
              Secretaria del Tribunal Supremo