ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| WORLDWIDE ENVIRONMENTAL PRODUCTS, INC.<br><br>Recurrido<br><br>V.<br><br>JUAN M. GOTAY AMADOR, SOCIEDAD LEGAL DE GANANCIALES, FULANA DE TAL Y OTROS<br><br>Peticionarios | TA2025CE00253 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2025CV01774<br><br>Sobre:<br><br>Libelo, Calumnia o Difamación |

Panel integrado por su presidenta, la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

## RESOLUCIÓN

En San Juan, Puerto Rico, a 22 de septiembre de 2025.

José M. Gotay Amador y Dr. Diesel, Inc. (en conjunto, los peticionarios) nos solicitan que revisemos la *Orden* que notificó el Tribunal de Primera Instancia, Sala de Caguas (TPI), el 31 de julio de 2024. Mediante esta, el foro primario ordenó a los peticionarios retirar de las redes sociales todo video y/o expresión escrita en la que se refiera a la persona del señor Arturo Deliz Vélez y/o Worldwide Environmental Products, Inc. (WEP o recurrida). Igualmente, se les ordenó a estos abstenerse de hacer cualquier expresión pública mediante video o escrito sobre la recurrida, así como de la *Orden* emitida.

Por los fundamentos que expondremos a continuación, expedimos el auto de *Certiorari* y revocamos la *Orden* recurrida.

**I.**

El 28 de mayo de 2025, la recurrida presentó una *Demanda* contra los peticionarios por supuesta difamación, libelo, calumnia y daño a su imagen comercial.[1] En esencia, sostuvo que estos han llevado un patrón de difamación y libelo contra WEP, con la única intención de dañar la imagen comercial de la empresa y su buen nombre, lo cual ha provocado daños económicos y otros tangenciales. Además, indicó, entre otras cosas, que el señor José M. Gotay Amador ha subido a su página de Facebook, la cual cuenta con más de 900,000 seguidores, que el sistema utilizado por WEP impediría que madres solteras y otros conductores puedan inspeccionar su automóvil de manera correcta.[2] Igualmente, en los referidos videos, los peticionarios han dado entender que los permisos que permitieron a WEP operar en Puerto Rico, fueron producto de la corrupción en la gestión pública y de negocios turbios.

De lo anterior, la recurrida reiteró que todas las expresiones emitidas por los peticionarios son completamente falsas y se han utilizado con el único fin de dañar la imagen comercial de la empresa. Por lo tanto, solicitó al TPI por las expresiones difamatorias y/o libelosas una cantidad no menor de $10,000,000.00, mientras que por los daños económicos causados $1,000,000.00, que continúa en incremento.

Luego de varios trámites procesales, el 1 de julio de 2025 la recurrida presentó una *Moción Informativa y Solicitud de Orden Provisional.* [3] Allí, solicitó al foro primario que emitiera una orden para regular las expresiones de los peticionarios en redes sociales

---

[1] Entrada #1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).
[2] Íd., pág. 5.
[3] Entrada #11 de SUMAC TPI.

y otros medios, a los efectos de evitar que se agravaran los alegados daños. En específico, este sostuvo que Juan M. Gotay Amador ha publicado ciertos videos en su página de Facebook en la que hace alusión con vilipendio al proceso judicial que se ha iniciado con la presentación demanda.

No obstante, el foro primario emitió una *Orden* en la que expresó lo siguiente: "*Vista la Moción Informativa y Solicitud de Orden Provisional* promovida por la recurrida, el Tribunal dispone *No Ha Lugar*, por el momento. Sométase evidencia de las publicaciones que la demandante considera difamatorias e interesa sean descontinuadas y el Tribunal reevaluará".[4]

Luego de los trámites antes descritos, el 2 de julio de 2025, el peticionario, Dr. Diesel Inc. compareció ante el TPI mediante *Moción para Asumir Representación Legal y en Solicitud de Prórroga para Contestar Demanda*.[5] De igual forma, ese mismo día, compareció ante el foro primario en su carácter personal el peticionario, Juan M. Gotay Amador.[6]

El 7 de julio de 2025, el TPI aceptó las respectivas representaciones legales y les concedió a estos el término de treinta (30) días para formular alegación responsiva a la *Demanda*.[7] Ese mismo día, WEP presentó otro escrito intitulado *Moción en Cumplimiento de Orden y reiterando Solicitud de Orden Protectora*.[8] Según se desprende de la referida moción, la recurrida incluyó en el escrito unos enlaces que contenían publicaciones y expresiones alegadamente difamatorias realizadas por los peticionarios. Asimismo, la recurrida le solicitó al foro primario que para preservar la dignidad del proceso judicial

---

[4] Entrada #13 de SUMAC TPI.
[5] Entrada #15 de SUMAC TPI.
[6] Entrada #14 de SUMAC TPI.
[7] Entradas #17 y #18 de SUMAC TPI.
[8] Entrada #20 de SUMAC TPI.

emitiera una orden de mordaza contra los peticionarios o, en la alternativa, limitara sus expresiones.

En cuanto a lo anterior, el foro primario emitió una *Orden* en la que explicó que este se encuentra impedido de proveer el "conforme", ya que las computadoras de la OAT, la cuales los jueces utilizan para sus labores, están impedidas de acceder a la red Facebook.[9] Añadió, que las entradas de Facebook y/o los videos aludidos por la parte demandante deben ser provistas físicamente al Tribunal mediante un dispositivo móvil tipo USB para poder acceder el contenido aludido en su moción. En cumplimiento, la recurrida presentó una *Moción para Acreditar Presentación de Evidencia en Secretaría* en la cual se certificó que presentó la evidencia física que solicitada mediante dispositivo USB.[10]

Por otra parte, el 30 de julio de 2025, los peticionarios presentaron una *Moción Conjunta de Imposición de Fianza de No Residente y Otros Remedios* donde le solicitaron al TPI la imposición de fianza a WEP por esta ser una corporación foránea.[11] El 31 de julio de 2025, el TPI emitió una *Orden* en la que le impuso a la recurrida una fianza de no-residente por la cantidad de mil dólares ($1,000.00).[12]

Ese mismo día, el TPI emitió otra *Orden* en el cual ordenó los siguientes extremos: (i) se le ordena al demandado Juan M. Gotay Amador también conocido como Dr. Diesel retirar de las redes sociales todo video y/o expresión escrita en la que se refiera a la persona del señor Arturo Deliz Vélez y/o la demandante Worldwide Environmental Products, Inc.; (ii) se le ordena al

---

[9] Entrada #21 de SUMAC TPI.
[10] Entrada #22 de SUMAC TPI.
[11] Entrada #25 de SUMAC TPI.
[12] Entrada #26 de SUMAC TPI.

demandado Juan M. Gotay Amador también conocido como Dr. Diesel abstenerse de hacer cualquier expresión pública sea mediante video o escrito sobre la persona del señor Arturo Deliz Vélez y/o la demandante Worldwide Environmental Products, Inc.; (iii) abstenerse de hacer cualquier referencia a la presente Orden; (iv) que su incumplimiento con la presente Orden podrá dar lugar a un desacato al Tribunal, con la correspondiente imposición de multas y/o gastos y/o honorarios profesionales incurridos para traer a la atención del Tribunal su incumplimiento y/o pena de reclusión.[13]

Luego de la referida orden, el 7 de agosto de 2025, el TPI ordenó a WEP prestar la fianza requerida por la Regla 69.5 de Procedimiento Civil, 32 LPRA Ap. V.[14] El día después, la recurrida presentó en evidencia el recibo y el cheque con el pago de $1,000.00.[15]

Inconforme con el proceder del TPI, el 6 de agosto de 2025, los peticionarios presentaron recurso de *Certiorari* en cual alegaron los siguientes errores:

> **PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR UNA ORDEN DE CENSURA PREVIA QUE VIOLA EL DERECHO CONSTITUCIONAL DE LIBERTAD DE EXPRESIÓN Y DE PRENSA SIN TAN SIQUIERA NOTIFICAR DEL PROCESO NI OÍR A LOS PETICIONARIOS EN UNA CLARA VIOLACIÓN A LOS PRINCIPIOS MÁS BÁSICOS DEL DEBIDO PROCESO DE LEY CUANDO UNA ACTUACIÓN DEL ESTADO AFECTA DERECHOS CUYOS VALORES SON DE MAYOR JERARQUÍA

> **SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR UNA ORDEN QUE A TODAS LUCES ES UN ENTREDICHO PRELIMINAR O INJUNCTION PRELIMINAR SIN CUMPLIR CON LOS REQUISITOS MAS ELEMENTALES ESTABLECIDOS EN NUESTRO ORDENAMIENTO PROCESAL

---

[13] Entrada #27 de SUMAC TPI.
[14] Entrada #29 de SUMAC TPI.
[15] Entrada #30 de SUMAC TPI.

**TERCER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO DECRETAR LA SUSPENSIÓN DE TODO PROCEDIMIENTO EN EL PLEITO HASTA QUE LA PARTE RECURRIDA PRESTE LA FIANZA DE NO RESIDENTES SEGÚN REQUIERE LA REGLA 69.5 DE PROCEDIMIENTO CIVIL Y POR NO ADVERTIR QUE TRANSCURRIDO 60 DIAS DESDE LA NOTIFICACIÓN DE LA ORDEN PARA LA PRESTACIÓN DE LA FIANZA SIN QUE ESTA HAYA SIDO PRESTADA SE ORDENARÁ LA DESESTIMACIÓN DEL PLEITO

**CUARTO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRESIÓN AL IMPONER A LA RECURRIDA UNA FIANZA DE NO RESIDENTES CUYA CUANTÍA ES TAN ÍNFIMA QUE A TODAS LUCES CONSTITUYE UNA EXCEPCIÓN A LA REGLA PARA NO EXIGIR FIANZA

Transcurrido el término que WEP tenía para presentar su oposición al recurso, esta no compareció a pesar de haber sido debidamente notificada.

## II.

### A.

El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023); Rivera et al. v. Arcos Dorado et al., 212 DPR 194, 207 (2023); Torres González v. Zaragoza Meléndez, 211 DPR 821, 403 (2023); McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021); 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012). Contrario al recurso de apelación, la expedición o no del auto de *certiorari* solicitado descansa en la sana discreción del Foro Apelativo. Torres González v. Zaragoza Meléndez, *supra*; Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016).

En particular, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece los preceptos que regulan la expedición del recurso discrecional de *certiorari*, por parte del Tribunal de

Apelaciones, para la revisión de determinaciones interlocutorias del Tribunal de Primera Instancia. En lo pertinente, la regla dispone que,

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. 32 LPRA Ap. V, R. 52.1

Al evaluar un recurso de *certiorari* nuestros oficios se encuentran enmarcados en el Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas.*, Reglamento TA, 2025 TSPR 42, 215 DPR ____ (2025), que en su Regla 40 señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. <u>Torres Martínez v. Torres Ghigliotty</u>, 175 DPR 83, 97 (2008). La referida Regla dispone lo siguientes criterios:

a. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.

b. Si la situación de hechos planteada es la más indicada para el análisis del problema.

c. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

d. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

e. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

f. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

g. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**B.**

Dos preceptos constitucionales en nuestro ordenamiento jurídico enmarcan el derecho de difamación. Estos son la Sección 4 del Art. II de la Constitución que dispone que "no se aprobará ley alguna que restrinja la libertad de palabra o de prensa" y la Sección 8 del Artículo II que "[t]oda persona tiene derecho a la protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". Const. P.R., Art. II, Secs.4 y 8, LPRA Tomo I; Clavell v. El Vocero de P.R., 115 DPR 685, 690-691 (2013).

De esta protección surge la causa de acción de difamación, la cual envuelve la difícil tarea de balancear el alcance de la libertad de expresión y el derecho a la intimidad, ambos valores reconocidos como de alta jerarquía e interés público en nuestro ordenamiento jurídico. Meléndez Vega v. El Vocero de P.R., 189 DPR 123, 147 (2013); Giménez Álvarez v. Silén Maldonado, 131 DPR 91, 97-98 (1992). Por un lado, está el interés de mantener a la ciudadanía debidamente informada y fomentar el debate sobre cuestiones de interés público; y, por otro lado, el derecho a la intimidad. Clavell v. El Vocero, *supra*, pág. 691.

En Puerto Rico, la difamación ha sido definida en el ámbito civil como "desacreditar a una persona publicando cosas contra su

reputación". <u>Ojeda v. El Vocero</u>, 137 DPR 315, 325-326 (1994). Los elementos constitutivos de la causa de acción por difamación dependerán, en primera instancia, de si el demandante es una persona privada o una figura pública. Para que una persona privada tenga éxito en su causa de acción por difamación, deberá probar: (1) que la información difamatoria publicada es falsa, (2) que la publicación se hizo de forma negligente, y (3) que su publicación le causó daños reales. <u>Pérez Rosado v. El Vocero de P.R.</u>, 149 DPR 427, 442 (1999); <u>Villanueva v. Hernández Class</u>, 128 DPR 618, 642 (1991).   Si no hay daño, no hay acción jurídica, pues no hay remedio en nuestro derecho, debido a que falta uno de los elementos constitutivos de la causa de acción. <u>Ojeda v. El Vocero de P.R.</u>, *supra*, pág. 325.

La reclamación por difamación tiene dos vertientes en las cuales admite una reclamación por libelo y otra por calumnia. Cuando la reclamación por difamación sea por libelo, la persona privada deberá probar, además de los elementos antes mencionados, la existencia de un récord permanente de la expresión difamatoria. Por otro lado, la calumnia se configura cuando se realiza una expresión oral difamatoria y se prueban los otros elementos de la causa de acción por difamación. <u>Ojeda v. El Vocero de P.R.</u>, *supra*, págs. 325-326.

**C.**

La llamada prohibición a la censura previa es un principio fundamental del derecho constitucional, por lo que su tentativa llega al Tribunal acompañada de una fuerte presunción de inconstitucionalidad. <u>Aponte Martínez v. Lugo,</u> 100 DPR 282, 288 (1971). La doctrina contra la censura previa establece que no se permitirá la prohibición de expresión antes de que esta se produzca, aun cuando luego de producirse pueda imponerse un

castigo, si esa expresión no está protegida. J.J. Álvarez González, *Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos*, Bogotá, Ed. TEMIS, 2009, pág. 1071. Sin embargo, nuestro Tribunal Supremo ha reconocido tres (3) circunstancias en la que se ha permitido prohibir la publicación de determinada información. Dichas circunstancias son: (1) cuando una nación está en guerra; (2) cuando se trata de publicaciones obscenas; y (3) cuando se trata de exhortaciones a actos de violencia y al derrocamiento por la fuerza del gobierno ordenado. Pérez Vda. Muñiz v. Criado, 151 DPR 355, 369-370 (2000).

En consonancia con lo anterior, en Asoc. Med. Podiátrica v. Romero, 157 DPR 240, 247-248 (2002), la Asociación de Medicina Podiátrica de Puerto Rico solicitó al Tribunal que ordenase al doctor Romero Bassó abstenerse de continuar con su campaña de descrédito contra los podiatras. No obstante, nuestro más alto foro local razonó que este tipo de remedio es improcedente bajo la garantía constitucional a la libertad de expresión, ya que no sólo constituye una penalidad a las ideas y opiniones del doctor, sino una censura previa a las expresiones futuras de este. Íd., pág. 248. Por tanto, el referido foro resolvió que el tratar de penalizar al doctor Romero Bassó, quien es un ciudadano particular, por sostener una opinión contraria a los intereses de la referida Asociación viola la garantía a la libertad de expresión.

Conviene mencionar que, el profesor José Julián Álvarez González, en su obra *Derecho Constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos*, aclaró en cuanto al caso Asoc. Med. Podiátrica v. Romero*, supra,* lo siguiente:

. . . Toda sentencia en la que se adjudique, bajo el estándar constitucional aplicable, que el demandado difamó al demandante y se ordene la indemnización de los daños constituye "una penalidad a las ideas y opiniones" del demandado. Esa penalidad es constitucionalmente permisible porque se ha adjudicado que la expresión del demandado no está protegida por la cláusula de libertad de expresión. Otro tanto ocurre con la invocación de la doctrina de censura previa. **Esa doctrina, una especie de vaca sagrada del derecho constitucional norteamericano, postula que no es permisible que un tribunal emita un *injunction*, cuya desobediencia constituye desacato y puede conllevar una sentencia de prisión, en el que se prohíba la expresión antes de que ésta se produzca; se requiere que la expresión no protegida sea sancionada después que ésta se haya producido y tras un procedimiento judicial completo en el que se demuestre que esa expresión no está constitucionalmente protegida.** Por definición, no existe censura previa, sino remedio posterior a la expresión, si se ordena a un demandado que se retracte de sus expresiones difamatorias, una vez se ha resuelto tras juicio completo que esas expresiones no gozan de protección constitucional alguna. (Énfasis nuestro). Álvarez González, *op. cit.*, págs. 1079-1080 (citando a Álvarez González, *Colisión entre los derechos fundamentales a la libre de expresión y a la intimidad y dignidad humana en los Estados Unidos y Puerto Rico,* 11 Rev. Derecho y Humanidades (Chile), 79 (2005).

Por otra parte, el Tribunal Supremo de Estados Unidos ha rechazado las tentativas de censura previa, especialmente las que se han pretendido lleva mediante interdictos (*injunction*). Asoc. Med. Podiátrica v. Romero, *supra*, pág. 248; Álvarez González, *op. cit.*, pág. 1072. En Near v. Minnesota, 283 US 697, 706 (1931), se intentó prohibir mediante interdicto la publicación de un escrito en el periódico por considerarse malicioso, escandaloso y difamatorio. No obstante, nuestro más alto foro federal resolvió, que, pese a que el escrito poseía las referidas cualidades, la prohibición constituía una censura previa. Álvarez González, *op. cit.*, pág. 1073. En esencia, el mismo foro dispuso que la libertad de palabra y prensa no depende de lo que se diga o publique sea cierto, más bien que esta es necesaria para la vida de un país libre. Íd. Véase*,* además, New York Time Co. v. United States, 403 US 713 (1971); Burstyn v. Wilson, 343 US 495 (1952); Murdock v. Pennsylvania, 319 US 105 (1943).

**D.**

El entredicho Provisional, *injunction* o interdicto son recursos extraordinarios y discrecionales, cuyos contornos se delimitan en los Artículos 675-695 del Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA secs. 3521-3566 y por la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V. En general, estos son un mandamiento judicial expedido por un tribunal, en el cual se le ordena a una persona abstenerse de hacer o permitir que se haga cierta cosa que perjudique el derecho de otra. 32 LPRA sec. 3521. Siendo así, nuestro ordenamiento jurídico reconoce tres (3) modalidades de *injunction*, éstos son: el *injunction* permanente, injunction preliminar y el entredicho provisional. Véase, Regla 57 de Procedimiento Civil, *supra*.

La orden de entredicho provisional que emita un tribunal al evaluar la Demanda debe cumplir con los requisitos de las Reglas 57.1 y 57.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 57.4. Éstos son: (1) ser preciso en cuanto a lo que se prohíbe o exige hacer; (2) detallar por qué el daño es inminente, inmediato e irreparable; (3) explicar por qué se emitió sin notificación previa; e (4) incluir la cuantía de la fianza que se le requirió al demandante para que pueda responder por daños y costas en caso de que se haya expedido indebidamente. Íd.

En términos generales, el interdicto está encaminado a prohibir u ordenar la ejecución de determinado acto, con el fin de evitar que se causen perjuicios inminentes o daños irreparables a alguna persona, en casos en los que no hay otro remedio adecuado en ley. VDE Corporation v. F & R Contractors, 180 DPR 21, 40 (2010). Para determinar si procede es necesario examinar si la acción que se pretende evitar o provocar, connota o no un agravio de patente intensidad al derecho del individuo que

reclama una reparación urgente. Íd. Es decir, la parte promovente deberá demostrar que, de no concederse el remedio, sufrirá un daño irreparable. Íd. Un daño irreparable es aquél que no puede ser satisfecho adecuadamente mediante la utilización de los remedios legales disponibles. Íd. El propósito fundamental del *injunction* preliminar es el de mantener el *estatus quo* hasta que se celebre el juicio en sus méritos, por lo cual la orden de *injunction* preliminar, ya sea requiriendo un acto o prohibiéndolo, evita que la conducta del demandado produzca una situación que convierta en académica la sentencia que finalmente se dicte, o que se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. Mun. Ponce v. Gobernador, 136 DPR 776, 784 (1994).

Así pues, para expedir un *injunction* preliminar, se evalúa (a) la naturaleza del daño a que está expuesto la parte peticionaria; (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley; (c) la probabilidad de que la parte promovente prevalezca; (d) la probabilidad de que la causa se torne en académica; (e) el impacto sobre el interés público del remedio que se solicita, y (f) la diligencia y la buena fe con que ha obrado la parte peticionaria. Regla 57.3 de Procedimiento Civil, *supra.*

Por otra parte, el *injunction* permanente se produce por una sentencia final. Después del juicio en sus méritos y antes de ordenar un *injunction* permanente, el Tribunal debe tomar en consideración, nuevamente, la existencia o ausencia de algún otro remedio adecuado en ley. Los factores que se deben tomar en consideración para emitir el recurso de *injunction* permanente son: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en

ley; (3) el interés público envuelto; y (4) el balance de equidades. <u>Aut. Tierras v. Moreno & Ruiz Dev.Corp.</u>, 174 DPR 409, 428 (2008). Procede conceder una petición de *injunction* de permanente si la parte que lo solicita demuestra que no tiene ningún otro remedio en ley para evitar un daño. <u>Senado de PR v. ELA,</u> 203 DPR 62, 72 (2019).

### III.

En el primer y segundo señalamiento, los peticionarios aducen que el TPI incidió al emitir una orden de censura. En lo particular, estos alegan que el referido foro violó su derecho constitucional a la libertad de expresión sin tan siquiera darle la oportunidad de ser escuchados. Además, los peticionarios plantean que el TPI erró al dictar una orden que a todas luces es un entredicho preliminar o *injunction* sin cumplir con los requisitos más elementales establecidos en nuestro ordenamiento procesal.

Surge del expediente, que la recurrida solicitó al foro primario en dos (2) ocasiones una orden provisional y/o protectora. Pese a que, en un principio el TPI explicó que por la etapa en que se encontraba el pelito tal requerimiento no podía ser posible, eso cambió cuando tuvo ante si los supuestos videos difamatorios. En consecuencia, el foro primario emitió la orden provisional y/o protectora solicitada por WEP.[16] Allí, ordenó a los peticionarios retirar de las redes sociales todo video y/o expresión escrita en la que se refiera a la recurrida, así como abstenerse de hacer cualquier expresión pública de estos. Igualmente, les ordenó abstenerse de hacer cualquier referencia de la *Orden* emitida y que su incumplimiento podrá dar lugar a un desacato al Tribunal.

---

[16] Entrada #27 de SUMAC TPI.

Adviértase que, la referida *Orden* se emitió cuando tan siquiera los peticionarios habían presentado una alegación responsiva. Por tanto, el TPI se precipitó al concluir que los videos son difamatorios con tan solo las alegaciones de la demanda. De ese modo, el referido foro coartó a los peticionarios de su libertad de expresión sin haberles dado la oportunidad de ser escuchados. Pese a que, el foro primario manejó la solicitud de la recurrida como una orden de entredicho provisional o un *injunction*, este no cumplió con los requisitos contenidos en la Regla 57 de Procedimiento Civil, *supra.* Siendo así, la *Orden* no debe ser tratada como ninguno de los referidos recursos. Así pues, incidió el TPI al ordenar a los peticionarios a retirar de las redes sociales todo video y/o expresión escrita en la que se refiera a la recurrida.

Recordemos que, la libertad de expresión es de los derechos más apreciados en la Constitución de Puerto Rico y Estados Unidos, por lo que su prohibición puede ser tomada livianamente. Si bien es cierto que, en una causa de acción de difamación hay que poner en balanza el derecho a la intimidad y el de libertad de expresión, no es menos cierto que en el caso de autos no se hizo tal análisis cuando los peticionarios no tuvieron la oportunidad de defenderse.

Por otra parte, incidió el TPI al ordenar a los peticionarios abstenerse de hacer cualquier expresión pública de la recurrida y de la *Orden* en cuestión*,* toda vez porque tal prohibición constituye censura previa. Según vimos, la censura previa llega al Tribunal acompañada de una fuerte presunción de inconstitucionalidad. Aponte Martínez v. Lugo, *supra,* pág. 288. Ante esta realidad, los tribunales no pueden emitir una *orden* o *injunction*, cuya desobediencia constituiría un desacato, en el que se prohíba la expresión antes de que ésta se produzca. Álvarez González, *op.*

*cit.*, págs. 1079-1080. Dado que, se requiere que la expresión no protegida sea sancionada después que ésta se haya producido y tras un procedimiento judicial completo en el que se demuestre que esa expresión no está constitucionalmente protegida. Íd.

Ahora bien, en cuanto el tercer y cuarto error señalado, sobre la imposición tardía e ínfima de la fianza por razón de ser una corporación foránea, estos no se cometieron. Ciertamente, el TPI no impuso fianza a la recurrida hasta que los peticionarios la solicitaron. No obstante, la fianza fue impuesta antes de que los peticionarios presentaran una alegación responsiva, toda vez que el pleito aún se encontraba en una etapa temprana. Además, en cuanto a que el foro primario no advirtió sobre los sesenta (60) días que tenía para prestar fianza, no tiene méritos por la recurrida haber cumplido a cabalidad. Esto, ya que WEP presentó evidencia de que prestó fianza el día después de que el foro primario la ordenó. Por último, la cuantía de mil dólares ($1,000.00) impuesta en fianza es un asunto que cae en la sana discreción del foro primario. Véase, Regla 69 de Procedimiento Civil, *supra.*

De todo lo anterior, resolvemos que incidió el foro primario al emitir la *Orden* del 31 de julio de 2025, en la que prohibió las expresiones de los peticionarios. Somos de la opinión, que el TPI debe celebrar una vista en la que se permita a ambas partes exponer sus argumentos. Así, el TPI podrá poner en balanza el derecho a la intimidad y de libertad de expresión, ya que como sabemos este último no es absoluto y puede subordinarse a otros intereses. No obstante, llamamos la atención al foro primario que al celebrar la vista tome en consideración la normativa antes expuesta de censura previa.

**IV.**

Por los fundamentos antes expuestos, *expedimos* el auto de *Certiorari* presentado ante nuestra consideración y *revocamos* la *Orden* recurrida. Además, se ordena al TPI celebrar una vista en cumplimiento con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones